**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LOUIS SCARANTINO, Individually and On Behalf of All Others Similarly Situated, <br><br>　　　　　Plaintiff, <br><br>　　v. <br><br>PAREXEL INTERNATIONAL CORPORATION, A. DANA CALLOW, JR., PATRICK J. FORTUNE, MAYKIN HO, EDUARD E. HOLDENER, CHRISTOPHER J. LINDOP, RICHARD L. LOVE, JOSEF H. VON RICKENBACH, ELLEN M. ZANE, PAMPLONA CAPITAL MANAGEMENT, LLP, WEST STREET PARENT, LLC, and WEST STREET MERGER SUB, INC., <br><br>　　　　　Defendants. | Case No. 17-11360 <br><br> JURY TRIAL DEMANDED <br><br> CLASS ACTION |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1. This action stems from a proposed transaction announced on June 20, 2017 (the "Proposed Transaction"), pursuant to which PAREXEL International Corporation ("PAREXEL" or the "Company") will be acquired by West Street Parent, LLC ("Parent") and West Street Merger Sub, Inc. ("Merger Sub"), affiliates of Pamplona Capital Management, LLP (together with Parent and Merger Sub, "Pamplona").

2. On June 19, 2017, PAREXEL's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger

Agreement"). Pursuant to the terms of the Merger Agreement, shareholders of PAREXEL will receive $88.10 per share in cash.

3. On July 14, 2017, defendants filed a Preliminary Proxy Statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of PAREXEL common stock.

9. Defendant PAREXEL is a Massachusetts corporation and maintains its principal

executive offices at 195 West Street, Waltham, Massachusetts 02541. PAREXEL's common stock is traded on the NasdaqGS under the ticker symbol "PRXL."

10. Defendant A. Dana Callow, Jr. ("Callow") is a director of PAREXEL.

11. Defendant Patrick J. Fortune ("Fortune") is a director of PAREXEL.

12. Defendant Maykin Ho ("Ho") is a director of PAREXEL.

13. Defendant Eduard E. Holdener ("Holdener") is a director of PAREXEL.

14. Defendant Christopher J. Lindop ("Lindop") is a director of PAREXEL.

15. Defendant Richard L. Love ("Love") is a director of PAREXEL.

16. Defendant Josef H. von Rickenbach ("von Rickenbach") is Chairman of the Board and Chief Executive Officer ("CEO") of PAREXEL.

17. Defendant Ellen M. Zane ("Zane") is a director of PAREXEL.

18. The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Individual Defendants."

19. Defendant Pamplona Capital Management, LLP is an investment manager that provides an alternative investment platform across private equity and single manager hedge fund investments.

20. Defendant Parent is Delaware limited liability company and a party to the Merger Agreement.

21. Defendant Merger Sub is a Massachusetts corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

22. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of PAREXEL (the "Class"). Excluded from the Class are defendants herein and any

3

person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

23.     This action is properly maintainable as a class action.

24.     The Class is so numerous that joinder of all members is impracticable. As of March 31, 2017, there were approximately 51,049,576 shares of PAREXEL common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

25.     Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

26.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

27.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

28.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

29. PAREXEL is a leading global biopharmaceutical services company, providing a broad range of expertise-based clinical research, consulting, medical communications, and technology solutions and services to the worldwide pharmaceutical, biotechnology, and medical device industries.

30. Committed to providing solutions that expedite time-to-market and peak-market penetration, the Company has developed significant expertise across the development and commercialization continuum, from drug development and regulatory consulting to clinical pharmacology, clinical trials management, and reimbursement.

31. PAREXEL Informatics provides advanced technology solutions, including medical imaging, to facilitate the integrated clinical development and regulatory information management process.

32. PAREXEL has offices in eighty-six locations in fifty-one countries around the world, and has approximately 19,600 employees.

33. On February 1, 2017, PAREXEL issued a press release wherein it reported its financial results for the second quarter of fiscal year 2017, which ended on December 31, 2016. The Company reported service revenue of $534.4 million, up 3.1%. With respect to the results, Individual Defendant von Rickenbach commented:

> We are encouraged by the long-term revenue opportunity from our continuing strong new business awards. Cancellations in the second quarter returned to the normal range from the elevated levels of the first quarter. Our strong new business performance continues to drive solid backlog growth.
>
> We continue to adapt our organization to our revenue base in order to maximize our operational efficiency[.] We announced a restructuring program in January. With the help of this and other initiatives, we anticipate significant improvement in

adjusted operating margin in the fourth quarter of Fiscal Year 2017 and beyond.

34. On May 3, 2017, PAREXEL issued a press release wherein it reported its financial results for the third quarter of fiscal year 2017, which ended on March 31, 2017. The Company reported that its service revenue increased to $529.3 million. With respect to the results, Individual Defendant von Rickenbach commented:

> PAREXEL's financial results for the third quarter of Fiscal Year 2017 were in line with our expectations[.] We are encouraged by our outlook for revenue and overall operational performance in the fourth quarter.
>
> We continue to be committed to margin improvement. In response to revenue shortfalls earlier in this fiscal year, we are right-sizing the organization. In January, we announced a restructuring program, and we are now expanding that program. All in, we expect total annual savings of $75-$85 million from our restructuring activities in Fiscal Year 2018. We remain committed to our longer-term goal of 14-16% adjusted operating margin.
>
> The biopharmaceutical services market remains solid, and we continue to identify good opportunities across PAREXEL's broad range of services[.] We expect that our rising customer satisfaction positions us well to take advantage of these opportunities and to drive improved revenue performance in Fiscal Year 2018 and beyond.

35. Nevertheless, the Individual Defendants caused the Company to enter into the Merger Agreement, pursuant to which the Company will be acquired for inadequate consideration.

36. The Individual Defendants have all but ensured that another entity will not emerge with a competing proposal by agreeing to a "no solicitation" provision in the Merger Agreement that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals.

37. Further, the Company must promptly advise Pamplona of any proposals or inquiries received from other parties.

38. Moreover, the Merger Agreement contains a highly restrictive "fiduciary out" provision permitting the Board to withdraw its approval of the Proposed Transaction under extremely limited circumstances, and grants Pamplona a "matching right" with respect to any "Superior Proposal" made to the Company.

39. Further locking up control of the Company in favor of Pamplona, the Merger Agreement provides for a "termination fee" of $138 million payable by the Company to Pamplona if the Individual Defendants cause the Company to terminate the Merger Agreement.

40. By agreeing to all of the deal protection devices, the Individual Defendants have locked up the Proposed Transaction and have precluded other bidders from making successful competing offers for the Company.

41. The merger consideration to be paid to plaintiff and the Class in the Proposed Transaction is inadequate.

42. Among other things, the intrinsic value of the Company is materially in excess of the amount offered in the Proposed Transaction.

43. Accordingly, the Proposed Transaction will deny Class members their right to share proportionately and equitably in the true value of the Company's valuable and profitable business, and future growth in profits and earnings.

*The Proxy Statement Omits Material Information, Rendering It False and Misleading*

44. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

45. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

46. First, the Proxy Statement omits material information regarding PAREXEL's

financial projections and the analyses performed by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs").

47. With respect to PAREXEL's financial projections, the Proxy Statement fails to disclose: net income; interest expense; income taxes; depreciation and amortization; capital expenditures; changes in working capital; levered free cash flow; taxes; tax expense; post-tax restructuring charge; charges related to acquisitions and integration; charges related to the impairment of internally developed software, severance, facility costs, and changes in projections related to the Company's restructuring program; loss on fair value in connection with the Company's accelerated share repurchase program; and a reconciliation of all non-GAAP to GAAP metrics.

48. With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analyses*, the Proxy Statement fails to disclose: (i) the range of illustrative terminal values for the Company; and (ii) the inputs and assumptions underlying the discount rates ranging from 8.5% to 10.0%.

49. With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analyses*, the Proxy Statement fails to disclose the range of theoretical values per share of PAREXEL common stock.

50. With respect to Goldman Sachs' *Premia Paid Analysis*, the Proxy Statement fails to disclose: (i) the transactions observed by Goldman Sachs in the analysis; and (ii) the premia paid in such transactions.

51. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness

of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

52.     The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Merger"; (ii) "Recommendation of the Board and Reasons for the Merger"; (iii) "Opinion of PAREXEL's Financial Advisor"; and (iv) "Certain Prospective Financial Information."

53.     Second, the Proxy Statement omits material information regarding potential conflicts of interest of Goldman Sachs and the Company's second financial advisor, Chestnut Securities, Inc. ("Chestnut").

54.     The Proxy Statement states that "[a]ffiliates of Goldman Sachs also may have co-invested with Pamplona and its affiliates from time to time and may have invested in limited partnership units of affiliates of Pamplona from time to time and may do so in the future." However, the Proxy Statement fails to disclose the nature of such co-investments and the investments in limited partnership units of Pamplona's affiliates.

55.     The Proxy Statement also fails to disclose Goldman Sachs' holdings in PAREXEL's, Pamplona's, and their affiliates' stock.

56.     Additionally, the Proxy Statement fails to disclose whether Chestnut provided past services to PAREXEL or its affiliates, as well as the amount of compensation received for such services.

57.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

58. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Merger"; (ii) "Recommendation of the Board and Reasons for the Merger"; (iii) "Opinion of PAREXEL's Financial Advisor"; and (iv) "Chestnut Securities. Inc."

59. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to PAREXEL's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and PAREXEL

60. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

61. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. PAREXEL is liable as the issuer of these statements.

62. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

63. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

64. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy

Statement and in other information reasonably available to stockholders.

65. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

66. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

67. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Pamplona

68. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

69. The Individual Defendants and Pamplona acted as controlling persons of PAREXEL within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of PAREXEL and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

70. Each of the Individual Defendants and Pamplona was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

71. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had

the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly in the making of the Proxy Statement.

72. Pamplona also had direct supervisory control over the composition of the Proxy Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy Statement.

73. By virtue of the foregoing, the Individual Defendants and Pamplona violated Section 20(a) of the 1934 Act.

74. As set forth above, the Individual Defendants and Pamplona had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or

necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: July 24, 2017

**OF COUNSEL:**

**RIGRODSKY & LONG, P.A.**
Brian D. Long
Gina M. Serra
2 Righter Parkway, Suite 120
Wilmington, DE 19803
(302) 295-5310

**RM LAW, P.C.**
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
(484) 324-6800

**MATORIN LAW OFFICE, LLC**

By: */s/ Mitchell J. Matorin*
Mitchell J. Matorin (BBO# 649304)
18 Grove Street, Suite 5
Wellesley, MA 02482
(781) 453-0100

*Attorneys for Plaintiff*